1  Abraham J. Colman (SBN 146933)
   Email: acolman@reedsmith.com
2  Raymond Y. Kim (SBN 251210)
   Email: rkim@reedsmith.com
3  Cristyn N. Chadwick (SBN 280705)
   Email: cchadwick@reedsmith.com
4  REED SMITH LLP
   355 South Grand Avenue, Suite 2900
5  Los Angeles, CA  90071-1514
   Telephone:     213.457.8000
6  Facsimile:      213.457.8080

7  Attorneys for Defendant
   FIA Card Services, National Association

8

9                 **UNITED STATES DISTRICT COURT**

10       **NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

11

12

| | |
|---|---|
| 13  LAWRENCE WELCH, | Case No.: 5:13-cv-01154-HRL |
| 14                        Plaintiff, | **DEFENDANT FIA CARD SERVICES, NATIONAL ASSOCIATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 15          vs. | |
| 16  FIA CARD SERVICES, NATIONAL ASSOCIATION an FDIC insured corporation and DOES 1 to 100, inclusive, | |
| 17 | |
| 18                        Defendants. | Date:          March 4, 2014 |
| 19 | Time:          10:00 a.m.<br>Courtroom:   2 |
| 20 | Complaint Filed:     February 13, 2013 |
| 21 | FAC Filed:            May 13, 2013 |
| 22 | The Honorable Howard R. Lloyd |
| 23 | [*Filed concurrently with Declaration of Larry Parrott; Declaration of Cristyn N. Chadwick; and [Proposed] Order*] |
| 24 | |

25

26

27

28

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 4, 2014, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-entitled court, located at 280 S. 1st Street, San Jose, California 95113, defendant FIA Card Services, National Association ("FIA"), shall and hereby does move this Court for summary judgment, or in the alternative, summary adjudication, all of the causes of action in Plaintiff Lawrence Welch's ("Plaintiff") First Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 56 of the Federal Rules of Civil Procedure.

More specifically, FIA moves for summary judgment on Plaintiff's first and second causes of action, which are brought under the federal Fair Credit Reporting Act ("FCRA") and California's Consumer Credit Reporting Agencies Act ("CCRAA"), respectively, on the grounds that Plaintiff has produced no admissible evidence supporting his claim that FIA reported a "collections" notation on his Experian credit report, that FIA never received notice that Plaintiff disputed the reporting on his credit card accounts, and that a purported "legal" inaccuracy is not actionable under the FCRA or CCRAA.  FIA also moves for summary judgment on Plaintiff's third cause of action for violation of California's Unfair Competition Law ("UCL") because he lacks standing to assert a UCL claim and because his predicate claims under the FCRA and the CCRAA both fail.

This motion is based on this Notice of Motion and Memorandum of Points and Authorities, all pleadings and papers on file in this action, and on such other matters as may be presented to the Court at the time of the hearing.

DATED:  January 28, 2014                    REED SMITH LLP


By:   /s/ *Cristyn N. Chadwick*
     Abraham J. Colman
     Raymond Y. Kim
     Cristyn N. Chadwick
     Attorneys for Defendant
     FIA Card Services, National Association

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF UNDISPUTED FACTS .......................................................2

    A.    Plaintiff Failed to Make Payments on His Credit Card Accounts ...............2

    B.    The Accounts Were Discharged in Bankruptcy.............................................2

    C.    Plaintiff's Admissible Credit Reports Accurately State that the Accounts Were Discharged in Bankruptcy, with a $0 Balance ....................................2

III. LEGAL ARGUMENT ..........................................................................................3

    A.    Legal Standard for Motion for Summary Judgment Under Rule 56 ............3

    B.    Plaintiff's FCRA Claim Fails as a Matter of Law ......................................4

        1.    Plaintiff Has Proffered No Admissible Evidence Showing that FIA Reported a "Collection" Notation to Experian ....................................4

        2.    FIA Never Received Notice that Plaintiff Disputed FIA's Reporting............................................................................................6

        3.    Plaintiff Does Not Allege that FIA Reported Factually Inaccurate Information, and "Legally Inaccurate" Reporting is not Actionable Under the FCRA ......................................................................................8

        4.    FIA's Reporting Is Not Materially Misleading Because FIA Was Not Obligated to Report a Meritless Dispute....................................12

    C.    Plaintiff Fails to State a Viable California Consumer Credit Reporting Agencies Act Claim ...................................................................................14

    D.    Plaintiff Fails to State a Viable UCL Claim ..............................................14

        1.    Plaintiff Lacks Standing to Assert a UCL Claim...........................14

        2.    Plaintiff's Predicate Claims Fail, Therefore His UCL Claim Also Fails.................................................................................................15

IV. CONCLUSION...................................................................................................16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242 (1986).................................................................................................. 4

*Cahlin v. Gen. Motors Acceptance Corp.*,
936 F.2d 1151 (11th Cir. 1991) ............................................................................... 11

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876, 890 (9th Cir. 2010) .......................................................... 8, 9, 11, 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................. 4

*Chiang v. Verizon New England Inc.*,
595 F.3d 26 (1st Cir. 2010) ......................................................................... 7, 10, 11

*Cleveland v. Policy Mgmt. Sys. Corp.*,
526 U.S. 795 (2001).................................................................................................. 4

*Cruz v. MRC Receivables Corp.*,
563 F. Supp. 2d 1092 (N.D. Cal. 2008) ................................................................... 6

*Daro v. Superior Court*,
151 Cal. App. 4th 1079 (2007) ............................................................................... 15

*DeAndrade v. Trans Union LLC*,
523 F.3d 61 (1st Cir. 2008) ......................................................................... 9, 10, 11

*Drew v. Equifax Info. Serv., LLC*,
690 F.3d 1100 (9th Cir. 2012) ............................................................................. 6, 8

*Giovanni I*,
2012 WL 6599681 (2012).................................................................................. 12, 13

*Giovanni v. Bank of America, N.A.*,
2013 WL 1663335 (N.D. Cal. Apr. 17, 2013) ................................................. 11, 15

*Gorman, LLP*,
584 F.3d at 1154 ........................................................................................... 7, 8, 12

*Guimond v. Trans Union Credit Information Co.*,
45 F.3d 1329 (9th Cir. 1995) ................................................................................. 14

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) ................................................................................. 15

*Harrold v. Experian Information Solutions, Inc.*,
2012 WL 4097708 (N.D. Cal. Sept. 17, 2012) ...................................................... 11

*In re Mahoney*,
368 B.R. 579 (Bkrtcy. W.D.Tex. 2007).................................................................... 6

*Khoury v. Maly's of Cal., Inc.*,
14 Cal. App. 4th 612 (1993) ................................................................................... 15

*Krantz v. BT Visual Images, LLC*,
89 Cal. App. 4th 164 (2001) ................................................................................... 15

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Lazar v. Hertz Corp.*,
   69 Cal. App. 4th 1494 (1999) ............................................................................................... 15

*Matsushita Elc. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................................ 3

*Mortimer I*,
   2013 WL 57856 (2013) .......................................................................................................... 12

*Mortimer v. Bank of America, N.A.*,
   2013 WL 1501452 (N.D. Cal. Apr. 10, 2013) ............................................................... 11, 15

*Mortimer v. J.P. Morgan Chase Bank, N.A.*,
   2012 WL 3155563 (N.D. Cal. Aug. 2, 2012) ...................................................................... 11

*Natale v. TRW, Inc.*,
   1999 WL 179678 (N.D. Cal. 1999) ...................................................................................... 14

*Rollins v. Peoples Gas Light and Coke Co.*,
   379 F.Supp.2d 964 (N.D. Ill. 2005) ....................................................................................... 7

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir. 2008) .............................................................................................. 16

*Safeco Ins. Co. of America v. Superior Ct.*,
   173 Cal. App. 4th 814 (2009) ............................................................................................... 15

*Seiler v. Lucasfilm, Ltd.*,
   808 F.2d 1316 (9th Cir. 1986) ................................................................................................ 5

*Young v. Equifax Credit Information Services, Inc.*,
   294 F.3d 631 (5th Cir. 2002) .................................................................................................. 7

**Statutes**

15 U.S.C. § 1681b ......................................................................................................................... 5
15 U.S.C. § 1681b(a)(2) ................................................................................................................ 5
15 U.S.C. § 1681s-2(b) ................................................................................................... 7, 8, 10, 12
15 U.S.C. § 1681s-2(b)(1) ............................................................................................................ 7
15 U.S.C. § 1681s-2(b)(1)(A) ...................................................................................................... 7
15 U.S.C. § 1681s-2(b)(1)(E)(i)-(iii) .......................................................................................... 8
Cal. Civ. Code § 1785.11 ............................................................................................................. 5
Cal. Civ. Code § 1785.11(a)(2) .................................................................................................... 5
Cal. Civ. Code § 1785.25(a) ....................................................................................................... 14

**Rules**

Fed. R. Civ. P. 56(c) ..................................................................................................................... 3
Fed. R. Civ. P. 56(e) ..................................................................................................................... 4
Fed. R. Evid. 1001-02 ................................................................................................................... 5
Fed. R. Evid. 1002 ........................................................................................................................ 5
Fed. R. Evid. 1003 ........................................................................................................................ 5
Fed. R. Evid. 1004-1007 ............................................................................................................... 5

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- iv -

Fed. R. Evid. 802 ................................................................................................................ 6

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     <u>INTRODUCTION</u>**

3          Plaintiff Lawrence Welch ("Plaintiff") claims that Defendant FIA Card Services, National

4   Association ("FIA") reported a "collection" notation for his credit card accounts[1] to credit reporting

5   agency Experian.  He alleges that the reporting of the "collection" notation was inaccurate by

6   operation of his Chapter 7 bankruptcy discharge and that, by continuing to report the notation, FIA

7   violated the Fair Credit Reporting Act ("FCRA"), its California counterpart, the California Consumer

8   Credit Reporting Agencies Act ("CCRAA"), and thus the California Unfair Competition Law,

9   section 17200 ("UCL").  Plaintiff's entire lawsuit is predicated on this contention.

10         Plaintiff's claims suffer from three fatal flaws.  First, Plaintiff has produced no admissible

11  evidence showing that Plaintiff reported a "collection" notation to Experian.  FIA does not report

12  "collection" notations on any of its credit card accounts, and the only Experian report produced by

13  Plaintiff shows no "collection" notation reported.  The only support offered by Plaintiff is an

14  inadmissible portion of an Equifax 3-Bureau Credit Report that is hearsay and violates of the best

15  evidence rule.

16         Second, Plaintiff has failed to produce any evidence showing that FIA received notice that

17  Plaintiff disputed the reporting on the Accounts.  FIA's obligation to investigate its reporting under

18  the credit reporting statutes was therefore not triggered.

19         Third, Plaintiff's theory that the purported reporting of a historical "collection" notation

20  became <u>legally</u> inaccurate by operation of his bankruptcy discharge is also critically flawed.

21  Well-established case law holds that the FCRA and CCRAA are intended to ensure only that credit

22  reports contain <u>factually</u> accurate information.  The FCRA and CCRAA do not impose on credit

23  furnishers the impossible obligation of resolving disputed legal questions that only courts or the

24  legislature can decide.  Claims, like Plaintiff's, predicated on purported <u>legal</u> inaccuracies are not

25  actionable.  Therefore, Plaintiff's FCRA and CCRAA claims incontrovertibly fail.

26

27  [1] Plaintiff's FIA credit card accounts ending in 0920 (the "0920 Account") and 1980 (the "1980 Account") (collectively, the "Accounts").  [Declaration of Larry Parrott ("Parrott Decl.") ¶¶ 2, 9].

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    FIA also moves for summary judgment on Plaintiff's UCL claim.  The UCL claim hinges
2  upon the viability of the FCRA and CCRAA claims, and because those two claims cannot survive, the
3  UCL claim fails as well.  Moreover, because Plaintiff has failed to establish that he suffered an injury
4  in fact or lost money or property as a result of FIA's allegedly inaccurate reporting, he lacks standing
5  to assert a UCL claim.  Accordingly, FIA respectfully requests that this Court grant summary
6  judgment in FIA's favor.

7  **II.    STATEMENT OF UNDISPUTED FACTS**

8    **A.    Plaintiff Failed to Make Payments on His Credit Card Accounts**

9    In March 2008, Plaintiff opened an FIA credit card account ending in numbers 0920.
10  [Declaration of Larry Parrott ("Parrott Decl.") ¶ 2].  Plaintiff failed to make a payment on the 0920
11  Account in October, 2010, and made no further payments in the months thereafter.  [Parrott Decl. ¶ 3;
12  Chadwick Decl. ¶ 4, Exh. F, Lawrence Welch Deposition ("Welch Depo.") at 27:1-7].  In September
13  2008, Plaintiff opened a second FIA credit card account, ending in numbers 1980.  [Parrott Decl. ¶ 9].
14  Plaintiff failed to make a payment on the 1980 Account in October, 2010, and made no further
15  payments in the months thereafter.  [Parrott Decl. ¶ 10; Chadwick Decl. ¶ 4, Exh. F, Welch Depo. at
16  27:1-7].

17    **B.    The Accounts Were Discharged in Bankruptcy**

18    On November 12, 2010, Plaintiff filed a Voluntary Petition for Chapter 7 Bankruptcy in the
19  United States Bankruptcy Court for the Northern District of California, Case Number 10-61705.
20  [Chadwick Decl. ¶ 4, Exh. C].  The Petition lists the Account as an unsecured, nonpriority claim.
21  [Chadwick Decl. ¶ 4, Exh. C; FAC, ¶ 12].  FIA received notice of the Petition on November 18, 2010.
22  [Parrott Decl. ¶ 12].  Subsequently, on March 1, 2011, the Bankruptcy Court entered a Discharge of
23  Debtor, granting Plaintiff a discharge of all dischargeable debts.  [Chadwick Decl. ¶ 3, Exh. B; FAC, ¶
24  14].  Every report produced by Plaintiff shows that the Accounts are reporting as discharged in
25  Chapter 7 bankruptcy with a "$0" balance.  [Chadwick Decl. ¶ 3, Exhs. D, E].

26    **C.    Plaintiff's Admissible Credit Reports Accurately State that the Accounts Were**
27          **Discharged in Bankruptcy, with a $0 Balance**

28    The only admissible credit reports produced by Plaintiff are a June 17, 2011 Experian credit

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

report, and the Equifax portion of a January 22, 2013 Equifax 3-Bureau Credit Report.

On or about June 17, 2011, Experian issued a credit report for Plaintiff.  [Chadwick Decl., ¶ 3, Exh. D].  The Experian report lists the 0920 Account and states that it is "Discharged through Bankruptcy Chapter 7" and reports a "Recent Balance" of "$0."  [Chadwick Decl., ¶ 3, Exh. D, at pg. 3 of 14].  The "Account History" section of the report also shows the information "Debt included in Chapter 7 Bankruptcy on Mar 1, 2011."  [*Id.*].  The report shows no "collection" notation reported for the 0920 Account.  [*Id.*].  The Experian report also lists the 1980 Account and states that it is "Discharged through Bankruptcy Chapter 7" and reports a "Recent Balance" of "$0."  [Chadwick Decl., ¶ 3, Exh. D, at pg. 4 of 14].  The "Account History" section of the report also shows the information "Debt included in Chapter 7 Bankruptcy on Mar 1, 2011."  [*Id.*].  The report shows no "collection" notation reported for the 1980 Account.  [*Id.*].  This information is accurate.

On or about January 22, 2013, Equifax issued a 3-Bureau Credit Report for Plaintiff.  [Chadwick Decl., ¶ 3, Exh. E.  The portion of the 3-Bureau Report that describes Equifax's reporting similarly shows that the 0920 Account is reporting as "Bankruptcy Chapter 7," "Included in Bankruptcy."  [*Id.*]  The report also shows a "Past Due Amount" of "$0."  [*Id.*]  The report shows no "collection" notation reported for the 0920 Account.  [*Id.*]  The Equifax 3-Bureau Report also states that the 1980 Account is reporting as "Bankruptcy Chapter 7," "Included in Bankruptcy," with a "Past Due Amount" of "$0."  [*Id.*]  The Equifax portion of the 3-Bureau Report shows no "collection" notation reported for the 0920 Account.  [*Id.*]  This information is also accurate.

As discussed more fully in Section III.B.1. *infra*, the portions of the 3-Bureau Credit Report that purport to state what other credit reporting agencies, including Experian, reported are inadmissible.

## III.   **LEGAL ARGUMENT**

### A.    **Legal Standard for Motion for Summary Judgment Under Rule 56**

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c); *see Matsushita Elc. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's

2   pleading," but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ

3   P. 56(e).

4          Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing

5   sufficient to establish the existence of an element essential to their case, and on which they bear the

6   burden of proof at trial. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-806 (2001). On an

7   issue as to which the nonmoving party has the burden of proof, the moving party can prevail merely by

8   pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*

9   *v. Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, the nonmoving party must

10  produce "more than a scintilla of evidence" to support his claim, but rather, must set forth evidence

11  sufficient for a jury to reasonably decide in its favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

12  252 (1986).

13       **B.      Plaintiff's FCRA Claim Fails as a Matter of Law**

14            **1.      Plaintiff Has Proffered No Admissible Evidence Showing that FIA**

15                  **Reported a "Collection" Notation to Experian**

16       Plaintiff's FAC is based entirely upon the assertion that FIA reported "collection" notations on

17  his Accounts to credit reporting agency Experian.[2] [FAC, at ¶ 19.] Plaintiff, however, has produced

18  no Experian credit report showing a "collection" notation. The only Experian credit report produced

19  by Plaintiff, dated June 17, 2011, reports the Accounts as discharged in Chapter 7 bankruptcy, with a

20  $0 balance, and shows no "collection" notation whatsoever. [Chadwick Decl., at ¶ 3, Exh. D.] While

21  Plaintiff has produced a 3-Bureau Credit Report that contains information purportedly reported by

22  Experian, this portion of the report is unreliable and inadmissible as hearsay and under the best

23  evidence rule. [Chadwick Decl., at ¶ 3, Exh. E.]

24       *First*, the reporting in the 3-Bureau Report as to Experian is unreliable because FIA does not

25

26  _____

    [2] As a threshold matter, Plaintiff testified at his deposition that he did not recognize the January 2013
27  Equifax report and, without authentication, the document is inadmissible on those grounds alone.
    [Chadwick Decl., ¶ 4, Exh. F, Welch Depo. at 72:13-23.]

28

report the term "collection" on any of its credit card accounts.  [Chadwick Decl., at ¶ 5, Exh. G, Deposition of Larry Parrott.]

*Second*, because Plaintiff offers the 3-Bureau Report to prove what Experian reported on January 22, 2013, the report violates the "best evidence rule."  When the content of a writing is at issue, the best evidence rule requires that the proponent produce the original or duplicate of the original.  Fed. R. Evid. 1001-02.  Because compilations and duplicates pose reliability problems, they must be excluded if the material terms are "genuinely disputed," or if admitting the secondary evidence would be "unfair."  Fed. R. Evid. 1003.[3]

Here, the 3-Bureau Report is not actually a "duplicate" of the Experian report.  Thus, Plaintiff cannot offer it as a substitute for the original.  Fed. R. Evid. 1002.  Moreover, Plaintiff has offered no evidence regarding the reliability and accuracy of the 3-Bureau Report, which appears to aggregate data from multiple sources.  Specifically, the Experian portion of the 3-Bureau Report is unreliable because it reports a notation that FIA does not report on any credit card account.  Additionally, because Plaintiff is the master of his complaint, he has no excuse for failing to produce the original January 22, 2013 Experian report.  *See Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986) (explaining that "inaccurate or incomplete duplication" is a chief concern of the "best evidence rule").  Since the Experian portion of the 3-Bureau Report is unreliable and not a duplicate of the January 22, 2013 Experian report, and since Plaintiff has no excuse for failing to produce the report explicitly referenced in his FAC, the best evidence rule prevents him from relying on the Experian portion of the 3-Bureau Report to prove his claims.

*Third*, if Plaintiff offers the 3-Bureau Report to prove what Experian reported in on January 22, 2013, the report is hearsay.  The hearsay rule excludes out-of-court statements offered for the truth of the matter asserted.  Fed. R. Evid. 802.  The 3-Bureau report is an out-of-court statement, and Plaintiff

---

[3] None of the other possible exceptions apply.  Plaintiff may retrieve his Experian, Equifax, and Transunion reports at any time. 15 U.S.C. 1681b(a)(2); Cal. Civ. Code § 1785.11(a)(2).  FIA cannot retrieve Plaintiff's credit reports solely for litigation purposes.  *See generally* 15 U.S.C. §1681b; Cal. Civ. Code § 1785.11.  And even if it could, FIA likely could only access current reports, which would not be relevant to Plaintiff's time-specific allegations.  Thus, none of the Best Evidence Rule exceptions, *see* Fed. R. Evid. 1004-1007, excuses Plaintiff from producing an original or duplicate.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    offers it for the truth of the matter asserted—that Experian reported certain information reported by

2    FIA.  Since the Experian portions of the 3-Bureau report are hearsay, and since Plaintiff has not laid a

3    business records foundation, or any indication of trustworthiness, Plaintiff cannot rely on it to prove

4    his claims.  Fed. R. Evid. 802; *Cruz v. MRC Receivables Corp.*, 563 F. Supp. 2d 1092, 1095-1096

5    (N.D. Cal. 2008) (excluding credit reports as inadmissible hearsay and striking paragraphs in related

6    declarations).  *See also In re Mahoney*, 368 B.R. 579, 593 (Bkrtcy. W.D.Tex. 2007) ("In short,

7    Plaintiff is attempting to prove a statement by the Defendants by showing three cherry-picked pages

8    (out of hundreds) of credit reports, which are not statements of the Defendants, not statements of one

9    who directly received Defendant's statements, but rather statements of parties twice removed").[4]

10       The Court should therefore exclude the Experian portion of the January 22, 2013 3-Bureau

11   Report as inadmissible.

12            **2.       FIA Never Received Notice that Plaintiff Disputed FIA's Reporting**

13       Plaintiff claims that FIA violated Section 1681s-2(b) of the FCRA on the ground that "Plaintiff

14   promptly disputed the accuracy of the 'collection' notation" on his Experian report, and that FIA

15   "fail[ed] to report to Experian that the account information was in dispute."  [FAC, at ¶¶ 26, 29.]

16   There is no evidence, however, that FIA received notice that Plaintiff disputed the reporting on the

17   Accounts and, therefore, FIA cannot be liable under Section 1681s-2(b) for not reporting the Accounts

18   as disputed to the credit reporting agencies.

19       Section 1681s-2(b) provides that, after receiving notice of a dispute from a credit reporting

20   agency "with regard to the completeness or accuracy of any [credit] information," a credit furnisher

21   must review all relevant information provided by the credit reporting agency, conduct a "reasonable"

22   investigation, and report the results of its investigation to the credit reporting agency.  15 U.S.C. §

23
24   [4] Plaintiff will likely cite *Drew v. Equifax Info. Serv., LLC*, to argue that the 3-Bureau Report is not
     hearsay because it is offered merely to show what FIA reported to Experian, Equifax, and Transunion,
     not for the truth of what FIA reported.  690 F.3d 1100, 1108 (9th Cir. 2012).  Unlike in *Drew*, however,
25   where the plaintiff offered a first-party report to prove what the furnisher reported to that agency, here,
     Plaintiff is offering a third-party report to prove what FIA reported to Experian.  Thus, the 3-Bureau
26   Report is offered to prove that Experian actually did report certain information from FIA.  Regardless
     of whether the underlying information reported by FIA is truthful, because the 3-Bureau Report is
27   offered to prove that Experian actually reported certain information, it is offered for the truth asserted.
28

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1 1681s-2(b)(1); *Gorman*, 584 F.3d at 1154-55.  Notably, the **credit furnisher's duty to investigate is**

2 **triggered only after it receives a notice of dispute from a credit reporting agency**:

> 3 [A] furnisher's obligation to conduct a reasonable investigation under §
>
> 4 1681s-2(b)(1)(A) arises when it receives a notice of dispute from a credit reporting
>
> 5 agency.  Such notice must include "all relevant information regarding the dispute
>
> 6 that the credit reporting agency has received from the consumer." 1§
>
> 7 1681i(a)(2)(A).  It is from this notice that the furnisher learns the nature of the
>
> 8 consumer's challenge to the reported debt, and it is the receipt of this notice that
>
> 9 gives rise to the furnisher's obligation to conduct a reasonable investigation.

10 *Id.  See, e.g., Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 639-40 (5th Cir. 2002)

11 ("Such notice is necessary to trigger the furnisher's duties under Section 1681s-2(b)."); *Chiang v.*

12 *Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *Rollins v. Peoples Gas Light and Coke Co.*,

13 379 F.Supp.2d 964, 966-67 (N.D. Ill. 2005) ("The duties § 1681s-2(b) imposes on furnishers of

14 information arise only after the furnisher is notified pursuant to  § 1681i(a)(2) by a consumer credit

15 reporting agency that a consumer challenges information.").

16 Here, Plaintiff alleges that FIA "fail[ed] to report to Experian that the account information was

17 in dispute."  [FAC, at ¶ 29.]  Section 1681s-2(b), however, only mandates that FIA conduct an

18 investigation upon receipt of a credit dispute notice from a credit reporting agency.  In the instant case,

19 FIA never received notice of a dispute, and Plaintiff has produced no evidence to the contrary.  [Parrott

20 Decl., at ¶¶ 6, 7, 14, 15.]  Without the requisite notice of dispute from a credit reporting agency, FIA

21 was not obligated to conduct an investigation into the accuracy of Plaintiff's credit report under

22 Section 1681s-2(b).  *See, e.g., Gorman, LLP*, 584 F.3d at 1160 ("We agree that '[w]hether a

23 reinvestigation conducted by a furnisher in response to a consumer's notice of dispute is reasonable ...

24 depends in large part on ... the allegations provided to the furnisher by the credit reporting agency.'").

25 Accordingly, Plaintiff's FCRA claim under Section 1681s-2(b) fails as a matter of law.

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

3.   **Plaintiff Does Not Allege that FIA Reported Factually Inaccurate Information, and "Legally Inaccurate" Reporting is not Actionable Under the FCRA**

In instances—unlike this one—where a credit furnisher's duty to investigate is triggered by a dispute notification and the creditor determines that information being reported is "inaccurate or incomplete," Section 1681s-2(b) requires that the furnisher update its reporting.  15 U.S.C. § 1681s-2(b)(1)(E)(i)-(iii).

An item on a credit report "can be 'incomplete or inaccurate' within the meaning of the FCRA because (1) the reported information is patently incorrect, or because (2) omitted information is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (citation and internal quotation marks omitted) (numerals added).  A credit report is considered "patently incorrect" if it is inaccurate on its face.  *Carvalho*, 629 F.3d at 891.  A report that is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions" is referred to as a report that is "materially misleading."  *See id*.

Plaintiff's FCRA claim fails first and foremost because FIA never received a dispute notification—as discussed in section III.B.2, *supra*.  Plaintiff's claim, however, also fails because, even if FIA had received a dispute notification, the purported "inaccurate information" that Plaintiff faults FIA for failing to correct is <u>legal</u> in nature.  The foundational requirement of a FCRA claim is the existence of a *factual inaccuracy*.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).  **Courts have held that *legal inaccuracies* cannot form the basis of a FCRA claim.**

For instance, in *Carvalho* the Ninth Circuit determined that a plaintiff could not pursue claims against a credit reporting agency that were predicated upon a legal inaccuracy.  In that case, the plaintiff filed suit against Equifax, alleging that Equifax had violated its obligations under the CCRAA[5] by reporting a $118 medical debt that the plaintiff claimed was not legally owed, because

---

[5] As discussed below in Section III.C *infra*, the CCRAA is California's counterpart to the FCRA. "The CCRAA mirrors the provisions of the FCRA."  *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1335 (9th Cir. 1995).

1   the medical provider had failed to comply with a condition precedent in its contract with the plaintiff.

2   *Id.* at 882-83.  Specifically, the plaintiff asserted that her contract with the medical provider required

3   the provider to bill her insurance before seeking payment from the plaintiff and, because the provider

4   had billed the wrong insurance company, she did not owe the debt in dispute.  *Id.*

5          The Ninth Circuit concluded that the plaintiff's claim was not viable because it failed to allege

6   an actionable "inaccuracy."  Relying upon the First Circuit's decision in *DeAndrade v. Trans Union*

7   *LLC*, 523 F.3d 61 (1st Cir. 2008), the Ninth Circuit concluded that a "[credit reporting agency] is not

8   required as part of its reinvestigation duties to provide a legal opinion on the merits" of a disputed legal

9   question.  *Carvalho*, 629 F.3d at 892 (emphasis added).  To the contrary, it reasoned that "determining

10  whether the consumer has a valid defense 'is a question for a court to resolve in a suit against the

11  [creditor,] not a job imposed upon consumer reporting agencies by the FCRA.'"  *Id.* (quoting

12  *DeAndrade*, 523 F.3d at 68).  Because the claimed legal inaccuracy was not an "inaccuracy" under the

13  FCRA, the Ninth Circuit concluded that the plaintiff "fail[ed] to establish an element of a prima facie

14  [FCRA] claim" and affirmed summary judgment in favor of the credit reporting agency.  *Id.*

15         The First Circuit reached a similar conclusion in *DeAndrade*.  *DeAndrade*, 523 F.3d at 61.  In

16  that case, the plaintiff filed suit against a credit reporting agency alleging that the credit reporting

17  agency had violated the FCRA "by 'failing to conduct a lawful reinvestigation' of [a] disputed debt

18  and failing to delete [an] allegedly inaccurate item from [plaintiff's] credit report."  *Id.* at 64.

19  Underlying the dispute was the plaintiff's legal contention that the debt at issue was not owed because

20  it was the result of a forgery—despite the fact that the plaintiff had made twenty-two monthly

21  payments on the debt.  *Id.* at 64-65.  After the plaintiff had allegedly discovered the fraud, he stopped

22  making payments to the lender, placed the payments into an escrow account, and filed suit against the

23  lender seeking a declaration that the debt was invalid.  *Id.* at 64.  The lender began reporting missed

24  payments to the credit reporting agency, and the plaintiff wrote the credit reporting agency informing

25  it of the pending lawsuit and her contention that the debt was not owed.  *Id.*  In response to the

26  plaintiff's letter, the credit reporting agency contacted the lender who verified that it believed the debt

27  was valid and owed, prompting the credit reporting agency to continue to report the plaintiff's missed

28  payments.  *Id.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   The district court granted summary judgment in favor of the credit reporting agency and the

2   First Circuit affirmed. *Id.* at 64-64.  It held that the plaintiff's claim was not cognizable under the

3   FCRA because it was based upon an alleged legal, as opposed to a factual, inaccuracy.  *Id.* at 68-69.

4   The court held that "[t]o determine whether a consumer has identified a factual inaccuracy on his or

5   her credit report that would activate § 1681i's reinvestigation requirement, the decisive inquiry is

6   whether the defendant credit bureau could have uncovered the inaccuracy if it had reasonably

7   reinvestigated the matter." *Id.* at 68 (citation and internal quotation marks omitted).  Because the

8   question of "[w]hether the mortgage is valid turns on questions that can only be resolved by a court of

9   law, such as whether [plaintiff] ratified the loan," it was not factual information that could have been

10  uncovered by a reasonable investigation.  *Id.*  The court concluded that the credit reporting agency was

11  "neither qualified nor obligated to resolve" a legal dispute of this nature and, therefore, plaintiff's

12  FCRA claim was not viable. *Id.* at 68-69.

13   While *Carvalho* and *DeAndrade* applied this principle in the context of a credit reporting

14  agency's obligations under the FCRA and CCRAA, the principle also has been applied when

15  interpreting the scope of a furnisher's obligations.  In *Chiang v. Verizon New England Inc.*, 595 F.3d

16  26, 38 (1st Cir. 2010), for example, the First Circuit acknowledged that the rationale of *DeAndrade*

17  extends to furnishers of credit.  In *Chiang*, the plaintiff filed suit against Verizon for violating §

18  1681s-2(b) after Verizon continued to report derogatory credit information related to charges on

19  services the plaintiff claimed he had not validly ordered after Verizon received multiple notices of

20  dispute from the credit reporting agencies.  *Id.* at 29-30.  Relying upon *DeAndrade* and its rationale

21  that the FCRA is only intended to apply to factual inaccuracies, the First Circuit "emphasize[d] that,

22  just as in suits against CRAs, a plaintiff's required showing is *factual* inaccuracy, rather than the

23  existence of disputed legal questions." *Id.* at 38 (emphasis in original).  It recognized that **"[l]ike

24  [credit reporting agencies], furnishers are neither qualified nor obligated to resolve matters that

25  turn on questions that can only be resolved by a court of law**." *Id.* (citation and internal quotation

26  marks omitted, emphasis added).  Because the plaintiff had failed to identify a *factual inaccuracy*, the

27  First Circuit concluded that the plaintiff's claims were not actionable under the FCRA. *Id.* at 41

28  ("[Plaintiff] has not . . . demonstrated that any of his substantive disputes with Verizon NE involved

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  actual, *factual inaccuracies* in his billing that a reasonable investigation could have detected.")

2  (emphasis added).

3       *Carvalho*, *DeAndrade* and *Chiang* all stand for the principle that a FCRA claim cannot be

4  predicated upon a claimed inaccuracy that turns on the resolution of a legal dispute.  These cases

5  recognize that the FCRA is intended to ensure that furnishers and credit reporting agencies report

6  information that is factually accurate.  To that end, the act provides a mechanism by which consumers

7  can dispute the accuracy of information reflected on their credit reports.  The FCRA's reinvestigation

8  provisions obligate credit reporting agencies and furnishers to conduct reasonable *investigations* into

9  their reporting—an obligation that necessarily presupposes an inquiry into the accuracy of facts, not

10 the merits of legal contentions.  **The statutory provisions do not obligate these entities (and their**

11 **non-legally trained personnel) to tackle the impossible task of predicting how courts will**

12 **ultimately resolve disputed legal questions so that they can decide how to report particular**

13 **credit-related information**.  Nor can credit reporting agencies or furnishers blindly side with the

14 consumer on legal disputes.  This is because "[t]he very economic purpose for credit reporting

15 companies would be significantly vitiated if they shaded every credit history in their files in the best

16 possible light for the consumer."  *Carvalho*, 629 F.3d at 892 (quoting *Cahlin v. Gen. Motors*

17 *Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991)).[6]

18      Here, Plaintiff's FCRA claim is predicated upon an alleged legal dispute, not a factual

19 "inaccuracy."  Notably, Plaintiff does not allege that the "collection" notation is factually inaccurate.

20 [*See* FAC generally.]  In fact, Plaintiff makes no effort to even explain what the term "collection"

21 means in the context of the 3-Bureau Report.  [*Id.*]  Instead, Plaintiff contends that the alleged

22

23 [6] There are important policy reasons to interpret the FCRA in a manner that is consistent with
24 *DeAndrade*, *Carvalho* and *Chiang*.  One such reason is to dissuade consumers from asserting FCRA
   claims predicated upon questionable or dubious legal arguments regarding the validity of a debt in
25 order to extort a settlement.  This concern is highlighted by the wave of recent cases in the Northern
   District of California asserting claims similar to those presented in this case.  *See, e.g.*, *Giovanni v.*
26 *Bank of America, N.A.*, 2013 WL 1663335 (N.D. Cal. Apr. 17, 2013); *Mortimer v. Bank of America,*
   *N.A.*, 2013 WL 1501452 (N.D. Cal. Apr. 10, 2013); *Harrold v. Experian Information Solutions, Inc.*,
27 2012 WL 4097708 (N.D. Cal. Sept. 17, 2012); *Mortimer v. J.P. Morgan Chase Bank, N.A.*, 2012 WL
   3155563 (N.D. Cal. Aug. 2, 2012).

28

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   "collection" notation is legally inaccurate by operation of his bankruptcy because it suggests that FIA

2   "still has the ability to enforce the debt," "violates industry standards," and "upon entry of the

3   discharge order, [FIA] should have reported a 'no data' notation in the payment history section of

4   Plaintiff's credit reports."  [FAC, ¶ 16.]   In other words, the entire basis for Plaintiff's claim is his

5   contention that the legal impact that his bankruptcy discharge required FIA to erase the purportedly

6   historically reported "collection" notation.  FIA, however, simply had no obligation under the FCRA

7   to resolve that legal question.  Under *DeAndrade*, *Carvalho* and *Chiang*, therefore, this type of claim

8   is not cognizable as a FCRA violation.

9           **4.**        **FIA's Reporting Is Not Materially Misleading Because FIA Was Not**

10                     **Obligated to Report a Meritless Dispute**

11        Although unclear, Plaintiff also appears to allege that FIA's reporting was materially

12  misleading because it failed to notify the credit reporting agencies that he disputed the reporting of

13  the "collection" notation.  [FAC, ¶ 29.]  Again, Plaintiff's claim fails because FIA never received

14  notification of a dispute regarding the Accounts.  [Parrott Decl., at ¶¶ 6, 7, 14, 15.]  Since no dispute

15  was received by FIA, no obligation to investigate was triggered, and Plaintiff's claim must fail.

16        Moreover, under *Gorman*, the Ninth Circuit held that a failure to note that a consumer

17  disputes his debt is actionable under § 1681s-2(b) only if the omission of the disputed nature of the

18  debt is "misleading in such a way and to such an extent that [it] can be expected to have an adverse

19  effect" on credit decisions.  *Gorman*, 584 F.3d at 1163 (citation and internal quotation marks omitted).

20  Additionally, the Court explained that "[h]olding that there is a private cause of action under §

21  1681s-2(b) does not mean that a furnisher could be held liable on the merits simply for a failure to

22  report that a debt is disputed."  Based on *Gorman*, cases decided in this District have held that, while

23  Section 1681s-2(b) requires a credit furnisher to report to credit reporting agencies that a consumer

24  disputes particular information, "***[i]f the consumer's dispute is meritless . . . the furnisher will not be***

25  ***held liable for failing to report it***."  *Giovanni I*, 2012 WL 6599681 at *4 (emph. added); *see also*

26  *Mortimer I*, 2013 WL 57856 at *8.  This is so because liability arises only when a credit furnisher

27  fails to report a "bona fide dispute," and "reporting an actual debt without noting that it is disputed is

28  unlikely to be materially misleading."  *Gorman*, 584 F.3d at 1163.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

As the Honorable Claudia Wilken explained in dismissing the plaintiff's FCRA claim in *Mortimer v. Chase*, where there is no inaccurate information being reported, there is nothing to dispute:

> [The plaintiff] asserts a claim based on [the defendant's] alleged failure to report to Experian that [the plaintiff] continued to dispute his payment delinquencies. . . . This claim is insufficiently alleged because [the plaintiff] has not asserted that [the defendant] reported incomplete or inaccurate information in the first place. "Holding that there is a private cause of action under § 1681s–2(b) does not mean that a furnisher could be held liable on the merits simply for a failure to report that a debt is disputed.  The consumer must still convince the finder of fact that the omission of the dispute was 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." "***In other words, a furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s–2(b) simply by failing to report a meritless dispute***, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading."

*Id.* at *3 (citation omitted).  The Court reached an identical conclusion in *Giovanni I.  Giovanni I*, 2012 WL 6599681 at *5-*6 (relying on the reasoning in *Gorman*, and finding that the information reported by Bank of America was accurate, this Court found that Bank of America's non-reporting of Plaintiff's dispute was not actionable.).

Here, therefore, even if FIA had received notice of a dispute, Plaintiff does not contend that FIA reported factually inaccurate information regarding the Accounts, and any dispute regarding the legality of the reporting is meritless under the FCRA.  FIA therefore had no obligation to report the Account as disputed.  Moreover, because FIA was already reporting all of the facts necessary for a prospective creditor to understand the relationship between Plaintiff and FIA—i.e. that the account was discharged in Chapter 7 bankruptcy and had a $0 balance—FIA's alleged failure to include in its reporting that Plaintiff "disputed" his debt would not have impacted how creditors viewed Plaintiff's account.

Accordingly, Plaintiff's FCRA claim fails as a matter of law.

C.   **Plaintiff Fails to State a Viable California Consumer Credit Reporting Agencies Act Claim**

The CCRAA is the California counterpart to the FCRA, and it similarly provides that, "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civil Code § 1785.25(a); *Guimond v. Trans Union Credit Information Co*., 45 F.3d 1329, 1335 (9th Cir. 1995) ("The CCRAA mirrors the provisions of the FCRA."); *Natale v. TRW, Inc*., 1999 WL 179678, at *7 (N.D. Cal. 1999) ("The CCRAA is identical to the FCRA.  Since the Court has [dismissed] plaintiff's claim for negligent inaccurate reporting, the Court will [dismiss] the CCRAA claim for the same reason.") (citation omitted).

Like Plaintiff's FCRA claim, Plaintiff's CCRAA claim is predicated upon Plaintiff's legal argument regarding the impact that his bankruptcy discharge had on FIA's purported obligation to remove the "collection" notation.  [FAC, at ¶¶ 16, 27-28.]  Plaintiff's CCRAA claim fails for the same reasons that his FCRA claim fails; namely, no Experian report shows a "collection" notation, FIA never received a dispute regarding the Accounts, and a purported "legal" inaccuracy is not actionable under the FCRA.  In *Carvalho*, the Ninth Circuit recognized that the principle that legal disputes cannot be the basis of an FCRA claim applies with equal force to the CCRAA.  *Carvalho*, 629 F.3d at 890.  Recognizing the similarities between these two statutes, and operating under the assumption "that California courts would interpret the FCRA and CCRAA consistently," the Ninth Circuit applied this principle to a CCRAA claim and concluded that because a credit reporting agency was not capable of resolving disputed legal questions, a claim predicated upon a legal inaccuracy could not serve as the basis of a CCRAA claim.  *Id.* at 890-91.  Because this principle applies with equal force to the CCRAA, Plaintiff's claim fails for the reasons discussed above in Section III.B, *supra*.

Accordingly, Plaintiff's second cause of action for violation of the CCRAA fails as a matter of law, and FIA's motion for summary judgment should be granted.

D.   **Plaintiff Fails to State a Viable UCL Claim**

1.   **Plaintiff Lacks Standing to Assert a UCL Claim**

Plaintiff does not have standing under the UCL because he cannot establish that he "suffered

- 14 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   injury in fact and [] lost money or property as a result of the unfair competition." *Safeco Ins. Co. of*

2   *America v. Superior Ct.*, 173 Cal. App. 4th 814, 827 (2009); *Hall v. Time Inc.*, 158 Cal. App. 4th 847,

3   852 (2008).  To prevail under the UCL, "there *must be a causal connection* between the harm suffered

4   and the unlawful business activity." *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007)

5   (holding that defendants had committed an unlawful business practice but plaintiffs lack standing

6   under the UCL because causation did not exist) (emphasis added); *Hall*, 158 Cal. App. 4th at 852.

7   Notably, when asserting a claim under the UCL, "[a] plaintiff must state with reasonable particularity

8   the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.,* 14 Cal.

9   App. 4th 612, 619 (1993).

10      Here, Plaintiff lacks standing because he does not—and cannot—prove that he "lost money or

11   property and suffered injury in fact" as a result of FIA's credit reporting.  [Chadwick Decl., ¶ 4, Exh.

12   F, Welch Depo. at 48:10-49:2; 89:17-91:4.]  In reality, as of March 2011, Plaintiff's credit reports

13   already reported a bankruptcy.  [Chadwick Decl., ¶ 3, Exhs. D-E].  Plaintiff testified at his deposition

14   that the "Discharged through Bankruptcy Chapter 7" and "Debt Included in Chapter 7 Bankruptcy"

15   statements on the reports meant that he was no longer obligated to pay on the Account.  [Chadwick

16   Decl., ¶ 4, Exh. F, Welch Depo. at 65:16-66-11; 80:5-17].  Plaintiff also testified that neither of his

17   two post-discharge denials of credit were attributable to any credit reporting by FIA.  [Chadwick

18   Decl., ¶ 4, Exh. F, at 89:17-91:4].  Plaintiff further testified that his credit was "ruined" by the

19   bankruptcy itself.  [Chadwick Decl., ¶ 4, Exh. F, Welch Depo. at 48:10-49:2].  Plaintiff's UCL claim

20   therefore fails.

21          **2.      Plaintiff's Predicate Claims Fail, Therefore His UCL Claim Also Fails**

22      The UCL requires a violation of the underlying law, and a defense to the predicate claim is a

23   defense to the UCL claim.  *Lazar v. Hertz Corp*., 69 Cal. App. 4th 1494, 1505 (1999); *Krantz v. BT*

24   *Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001) ("[R]elief under the unfair competition law []

25   - stand or fall depending on the fate of the antecedent substantive causes of action.").  Where a

26   plaintiff bases his UCL claim on failed FCRA or CCRAA claims, the UCL too must fail. *Giovanni II*,

27   2013 WL 1663335 at *9 ("Because Giovanni has not pleaded a violation of any other laws, her

28   'unlawful' prong claim fails."); *Mortimer II*, 2013 WL 1501452 at *13 ("Plaintiff failed to make out

- 15 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  a cause of action under the CCRAA.  Her UCL claim is based on an alleged violation of the

2  CCRAA . . . his UCL claim is dismissed with prejudice."); *Rose v. Chase Bank USA, N.A.*, 513 F.3d

3  1032, 1035 (9th Cir. 2008) (dismissing plaintiff's UCL claim, which hinged on merits of underlying

4  statutory cause of action; "Plaintiff's first claim under California's UCL must be dismissed, as

5  Plaintiffs' first claim rests on the predicate that [the defendant's] actions are 'unlawful' under

6  California Civil Code[.]").

7         Here, Plaintiff's UCL claim is predicated upon FIA's allegedly unlawful credit reporting

8  under the CCRAA.  [FAC, at ¶ 48.]  As discussed *supra*, both Plaintiff's FCRA and CCRAA claims

9  fail.  Plaintiff has not produced an admissible credit report that supports his claims, has produced no

10  evidence showing that FIA received notice of Plaintiff's purported dispute, and FIA was not

11  obligated to remove the historical information regarding the "collection" notation purportedly

12  reported on the Account prior to Plaintiff's bankruptcy discharge.  Because Plaintiff's underlying

13  claims fail, Plaintiff's UCL claim likewise fails.

14         Accordingly, Plaintiff's UCL claim fails as a matter of law.

15  **IV.    CONCLUSION**

16         Plaintiff's entire lawsuit is predicated on the allegation that FIA reported a "collections"

17  notation on his Experian credit report after Plaintiff's Chapter 7 bankruptcy discharge.  However,

18  Plaintiff has produced no Experian credit report showing any "collection" notation, FIA never

19  received notice that Plaintiff disputed FIA's reporting, and Plaintiff's theory that the "collection"

20  notation was "legally" inaccurate has been rejected by the courts.  Accordingly, FIA respectfully

21  requests that the Court grant FIA's motion for summary judgment.

22

23  DATED:  January 28, 2014                    REED SMITH LLP

24

25                                              By:    /s/ *Cristyn N. Chadwick*

26                                                  Abraham J. Colman
                                                   Raymond Y. Kim
27                                                  Cristyn N. Chadwick
                                                   Attorneys for Defendant
28                                                  FIA Card Services, National Association

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF